UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON JAMES and PATRICIA RODRIGUEZ, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>CHOCMOD USA INC.,<br><br>                Defendant. | Case No.: 1:22-cv-01435 JLT SKO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>(Doc. 16) |

Sharon James and Patricia Rodriguez, on behalf of themselves and all others similarly situated, seek to hold Chocmod USA Inc. liable for false and deceptive practices surrounding the marketing, distribution, and sale of its chocolate truffle products. (*See generally* Doc. 8.) Pending before the Court is Defendant's motion for judgment on the pleadings. (Doc. 16.) For the reasons set forth below, the motion is **DENIED**.

I.     **Background**

This case concerns the labeling of Defendant's "Truffettes de France," chocolate truffles purchased by Plaintiffs based on allegedly deceptive and misleading representations that the truffles were made in France. (*See* Doc. 8 ¶¶ 8-9, 16, 20.) According to Plaintiffs, "chocolate truffles originated from Chambéry, in Savoie, France, where they were invented by pastry chef Louis Dufour in 1895." (*Id*. ¶ 14.) Since their invention, truffles "have been considered a delicacy associated not

only with France, but also with luxury." (*Id*. ¶ 15.) Plaintiffs allege Defendant capitalizes on the demand for authentic French truffles by labeling, advertising, and selling its truffle products by using the brand name "Truffettes de France," which translates to "Truffles from France." (*Id*. ¶¶ 16, 19.) Plaintiffs assert that these representations are "an unequivocal promise" that the truffles are made in France, and thus, reasonable consumers purchasing the truffles would expect as such. (*Id*. ¶ 20.) Unfortunately, "[u]nbeknownst to consumers," the truffles are manufactured in, and imported from, Canada. (*Id*. ¶ 21.) Plaintiffs allege that consumers are willing to pay more for French-made truffles and "would have paid significantly less for the [truffles], or would not have purchased them at all, had they known that the truth about them." (*Id*. ¶ 25.) Thus, Plaintiffs assert they have lost money as a result of Defendant's "false and deceptive practices." (*Id*. ¶ 26.)

Plaintiffs filed this putative class action on November 7, 2022. (Doc. 1.) The operative first amended complaint asserts causes of action for (1) violation of California's Consumers Legal Remedies Act ("CLRA"); (2) violation of California's False Advertising Law ("FAL"); (3) violation of California's Unfair Competition Law ("UCL"); (4) breach of express warranty; (5) breach of the implied warranty of merchantability; and (6) unjust enrichment. (Doc. 8 ¶¶ 37-83.)[1] Defendant filed its answer to the FAC on January 5, 2023. (Doc. 9.) Defendant now moves for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Doc. 16.) Plaintiffs filed an opposition (Doc. 21), to which Defendant replied. (Doc. 22.)

## II. Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1356 (9th Cir. 1990). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not

---

[1] The FAC raises claims on behalf of three putative classes. The CLRA claim is asserted on behalf of a "California Consumer Subclass" (i.e. consumers in California who purchased for "personal, family, or household purposes"). (Doc. 8 ¶¶ 37-48.) The FAL, UCL, and breach of warranty claims are raised on behalf of a "California Class" (i.e. consumers in California). (*Id*. ¶¶ 49-77.) Finally, Plaintiffs' claim for unjust enrichment is brought on behalf of a "Nationwide Class" (i.e. all consumers in the United States), and, alternatively, the California Class defined above. (*Id*. ¶¶ 78-83.) For purposes of this order, the Court's reference to "Plaintiffs" includes putative class members as alleged in the FAC.

1  in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings
2  and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76
3  (5th Cir. 1990) (per curiam).

4  Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in
5  the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."
6  *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo*
7  *v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)). The Court applies the same standard as on
8  a 12(b)(6) motion for failure to state a claim upon which relief can be granted. *Cafasso, U.S. ex rel. v.*
9  *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011); *see also Morgan v. Cnty. of*
10 *Yolo*, 436 F. Supp. 2d 1152, 1154-55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x 734 (9th Cir. 2008) (a
11 motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's
12 pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6).");
13 *Lowden v. T-Mobile USA Inc.*, 378 Fed. Appx. 693, 694 (9th Cir. 2010) ("To survive a Federal Rule of
14 Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is
15 plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

16 **III.    Discussion and Analysis**

17 Defendant moves for judgment on the pleadings on four grounds. First, Defendant argues that
18 Plaintiffs have not alleged damages and therefore, lack Article III standing and cannot prevail on their
19 CLRA claim. (Doc. 16 at 4-7.) Second, Defendant contends that the representations on its product
20 labels are not likely to deceive a reasonable consumer, which defeats Plaintiffs' CLRA, FAL, and
21 UCL claims. (*See id.* at 6-9.) Third, Defendant asserts that Plaintiffs' warranty claims fail because
22 Plaintiff made no promises—express or implied—that its products were made in France. (*Id*. at 9-10.)
23 Finally, Defendant contends that there is no stand-alone cause of action for unjust enrichment. (*See id*.
24 at 10-11.) The Court will address the threshold issue of standing before turning to Plaintiffs'
25 substantive claims. *See Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 960 (C.D. Cal. 2023)
26 ("Federal courts must ordinarily address jurisdictional questions before proceeding to the merits of the
27 case.").
28 ///

### A. Damages

Defendant argues that Plaintiffs "have not alleged damages," and consequently, that they (1) "have suffered no injury in fact" for purposes of establishing constitutional standing; and (2) cannot prevail on their CLRA claim. (Doc. 16 at 4-6.)

### 1. Article III Standing

To establish Article III standing, a plaintiff "must demonstrate (1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Statutory standing under the UCL and FAL requires an individual to have "suffered injury in fact and lost money or property as a result of the alleged unfair competition or false advertising." *Warren v. I-Health, Inc.*, 2024 WL 4368234, at *2 (E.D. Cal. Oct. 1, 2024) (cleaned up) (citing Cal. Bus. & Prof. Code §§ 17204, 17535; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321 (2011)). Relatedly, the CLRA provides standing to "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civ. Code § 1780(a). "Because the 'any damage' standard includes even minor pecuniary damage, … any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013), Therefore, standing under the UCL, FAL, and CLRA are properly considered together. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020-21 (9th Cir. 2020).

To satisfy the "lost money or property" requirement under the UCL and FAL, the Ninth Circuit has been guided by the California Supreme Court's decision in *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011), which held that "a plaintiff must demonstrate 'some form of economic injury' as a result of his transactions with the defendant, although 'the quantum of lost money or property necessary to show standing is only so much as would suffice to establish [Article III] injury in fact.'" *Hinojos*, 718 F.3d at 1104 (quoting *Kwikset*, 51 Cal. 4th at 323-24). In other words, "a party who has lost money or property generally *has* suffered injury in fact." *Kwikset*, 51 Cal. 4th at 322 (emphasis in original). "Because the lost money or property requirement is more difficult to satisfy than that of

4

injury in fact, … the same allegations … that suffice to establish economic injury will generally show injury in fact as well." *Id.* at 325; *see also Warren*, 2024 WL 4368234, at *3 (explaining that because UCL and FAL "economic injury" requirement is "more exacting" than Article III standing, if one establishes standing under the former, it also establishes standing under the latter).[2]

Thus, to demonstrate standing at the pleading stage, a plaintiff "need only allege economic injury arising from reliance on [the defendant's] misrepresentations." *Kwikset*, 51 Cal. 4th at 327. The Ninth Circuit has recognized that "a consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL and FAL] by alleging … that he or she would not have bought the product but for the misrepresentation, and that such allegations are sufficient to establish economic injury within the meaning of [those statutes]." *McCoy v. Nestle USA, Inc*, 173 F. Supp. 3d 954, 963 (N.D. Cal. 2016), *aff'd sub nom.* 730 F. App'x 462 (9th Cir. 2018) (quoting *Hinojos*, 718 F.3d at 1105) (internal quotation marks omitted) (brackets in original); *see also Moore*, 966 F.3d at 1020.

Considering these principles, the California Supreme Court in *Kwikset* held that plaintiffs had established UCL standing based on allegations that "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." *Kwikset*, 51 Cal. 4th at 327-28. The Ninth Circuit's decision in *Hinojos* followed. There, the plaintiff alleged that he bought department store merchandise he would not have purchased had he not been misled by the store's advertisements indicating that the merchandise price had been marked down from a fictitious "original" or "regular" price. *Hinojos*, 718 F.3d at 1102. "Applying *Kwikset* in a straightforward manner," the Ninth Circuit found these allegations sufficient, concluding that plaintiff "ha[d] done everything *Kwikset* requires to allege an economic injury under the UCL and

---

[2] The "as a result of" language of the UCL, FAL, and CLRA imposes an "actual reliance" or causation requirement. *Kwikset,* 51 Cal. 4th at 326. As with economic injury, pleading that one would not have purchased a product but for a misrepresentation in a product's label is sufficient to allege causation *and* economic injury. *See id.* at 330; *see also Hinojos*, 718 F.3d at 1102 (causation requirement and economic injury requirement "are coextensive"); *Moore*, 966 F.3d at 1020-21 (finding plaintiffs sufficiently alleged actual reliance under UCL, FAL, and CLRA based on allegation that because of defendants' misrepresentation, they purchased, and paid more for, defendants' product than they would have absent the misrepresentation). Thus, the Court will not engage in a separate discussion of causation.

FAL." *Id.* at 1105, 1107. And because plaintiff had standing under the UCL's and FAL's "lost money or property" requirement, the Court also concluded that he had adequately alleged that he suffered "any damage" as required by the CLRA. *Id.* at 1108.

District courts within the Ninth Circuit have also applied these principles. *See, e.g.*, *Warren*, 2024 WL 4368234, at *3 (finding constitutional, UCL, FAL, and CLRA standing where plaintiffs alleged they purchased defendant's products in reliance on deceptive claims contained on the products' front label that they would not have purchased otherwise); *Maisel v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at **3-4 (N.D. Cal. May 5, 2021) (noting that judges in the court's district "have routinely held that allegations that mislabeling caused the plaintiff to purchase products they might not have otherwise purchased suffices for statutory standing" under the UCL, FAL, and CLRA); *Padilla v. Whitewave Foods Co.*, 2019 WL 4640399, at **5-6 (C.D. Cal. July 26, 2019) (plaintiffs established Article III and statutory standing under UCL, FAL, and CLRA by alleging that had they known the protein powders they purchased were only one-third filled, they would not have purchased them, or would have paid less); *Mohamed v. Kellogg Co.*, 2015 WL 12469107, at *2 (S.D. Cal. Aug. 19, 2015) (denying motion for judgment on the pleadings based on standing where plaintiff "alleged that she would not have been willing to pay as much, or anything, for Gardenburgers, if she had not been misled by [defendant's] misrepresentations about Gardenburgers' ingredients"); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 961 (N.D. Cal. 2013) (plaintiff established constitutional and statutory standing by alleging he suffered economic injury because he paid an "unwarranted premium" due to defendants' false and misleading labels and would have purchased different products had defendants' been labeled truthfully).[3]

---

[3] Defendant argues in its reply brief that the Court "must not be swayed by Plaintiffs' creative use of selective citations" to cases that are "incongruent to the facts of this case." (Doc. 22 at 4.) Defendant specifically challenges Plaintiffs' reliance on the legal standards identified in *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013), a case in which standing was only challenged as to products that had not been purchased by the plaintiffs. (Doc. 22 at 4.) The purpose for making this distinction is unclear, as Plaintiffs merely quote *Wilson*'s recitation of the law, which the Court finds both accurate and applicable. (*See* Doc. 21 at 10 ("Under well-established Ninth Circuit law, plaintiffs adequately allege Article III standing and injury in a consumer fraud case 'by alleging that they purchased a product they otherwise would not have purchased, or that they spent too much on such a product, in reliance on a defendant's representations in ads or on labels.'") (quoting *Wilson*, 961 F. Supp. 2d at 1140).) Defendant does not challenge the accuracy of Plaintiffs' citation or acknowledge the other three cases cited alongside *Wilson* in Plaintiffs' opposition. Therefore, this argument is without merit.

Similar to the plaintiffs in *Kwikset* and *Hinojos*, Plaintiffs allege that: (1) Defendant labeled the relevant truffle products "Truffettes de France;" (2) the truffles were made in Canada, and therefore did not come "from France" as the label's translation promised; (3) Plaintiffs purchased the truffles "based on" this misrepresentation; and (4) Plaintiffs would not have otherwise purchased the truffles, or would have paid significantly less for them, had they known the truth. (*See* Doc. 8 ¶¶ 8-9, 23, 25-26.) Considering the well-established Ninth Circuit law on this issue, the Court finds Plaintiffs' allegations are sufficient, at this stage, to demonstrate both Article III and statutory standing under the UCL, FAL, and CLRA.

Defendant raises various arguments to support its position, which do not advance the issues. For instance, in claiming that Plaintiffs have suffered no injury-in-fact, Defendant highlights that Plaintiffs do not allege that the Canadian-made truffles are "substandard or unhealthy, or that they in any way differ from [Defendant's] identical truffles made in France." (Doc. 16 at 5.) Defendant argues that it, in fact, uses the same recipe for the truffles it makes in France as it does for those it makes in Canada, and it does not charge more based on where the truffles are manufactured. (*Id*.) Thus, according to Defendant, Plaintiffs would be in the same position whether they received Defendant's Canadian-made truffles or their French-made ones. (*Id*.) Asserted differently, Defendant claims "[t]he only conceivable damages in this case are that Plaintiffs purchased a product they did not enjoy," which is "not actionable." (*Id*.) Each of these arguments misses the mark. In fact, the *Kwikset* court rejected the very theory advanced by Defendant, reasoning that:

> To some consumers, processes and places of origin matter. [citations] Whether a particular food is kosher or halal may be of enormous consequence to an observant Jew or Muslim. Whether a wine is from a particular locale may matter to the oenophile who values subtle regional differences. Whether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger. And whether food was harvested or a product manufactured by union workers may matter to still others. [citations]
> …
> For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent. A counterfeit Rolex might be proven to tell the time as accurately as a

> genuine Rolex and in other ways be functionally equivalent, but we do not doubt the consumer (as well as the company that was deprived of a sale) has been economically harmed by the substitution in a manner sufficient to create standing to sue. Two wines might to almost any palate taste indistinguishable—but to serious oenophiles, the difference between one year and the next, between grapes from one valley and another nearby, might be sufficient to carry with it real economic differences in how much they would pay. Nonkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless.

*Kwikset*, 51 Cal. 4th at 328-30 (internal citations, footnotes omitted) (emphasis in original). This reasoning is illustrative. Whether the same truffle recipe is used, or whether *Defendant* places the same monetary value on French-made truffles as it does its Canadian-made ones, is immaterial to the standing inquiry.[4] *See Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 844 (N.D. Cal. 2019) ("[T]hat Keurig's recyclable and non-recyclable pods cost the same does not negate Plaintiff's alleged injury, as the price of Keurig brand substitutes does not change that Plaintiff alleges she paid more for the Pods than she otherwise would have because she thought they were recyclable.") (citing *Hinojos*, 718 F.3d at 1104-05 (finding the issue of economic injury for standing purposes is merely a threshold matter, so a specific measure of loss is not required)).

The fatal flaw in Defendant's argument is that it discounts the notion that to the *consumer*, the truffles' place of origin matters. Indeed, it is possible that even a chocolate connoisseur may not be able to distinguish French-made from Canadian-made truffles. Nonetheless, each may carry *economic* differences in how much such a consumer would pay. This is precisely what Plaintiffs allege—that consumers are willing to pay more for French-made truffles due to their history and tradition, and thus, in reliance on Defendant's front label indicating that the truffles were "from France," Plaintiffs paid a premium price they would not have otherwise paid. (Doc. 8 ¶¶ 23, 25-26.) Nothing more is required at this stage. *Hinojos*, 718 F.3d at 1104-05; *Kwikset*, 51 Cal. 4th at 327. Accordingly, Plaintiffs have sufficiently alleged Article III and statutory standing under the UCL, FAL, and CLRA. To this extent, Defendant's motion is **DENIED**.

///

---

[4] This assertion, if true, causes the Court to wonder why Defendant's package indicated that the truffles were from France.

8

### 2. CLRA Damages

Defendant's arguments in support of its position that Plaintiffs have alleged no damages under the CLRA were already raised in its standing challenge: that the truffles are identical to those Defendant makes in France and it does not charge more based on where the truffles are manufactured. (*See* Doc. 16 at 6-7.) For the reasons stated above, these arguments likewise fail to support Defendant's challenge to Plaintiffs' CLRA claim based on damages. Defendant's motion is **DENIED** on this basis.

### B. UCL, FAL, and CLRA Claims

#### 1. Legal Standards

Plaintiffs allege that Defendant's false and deceptive representations on its product labels violate the UCL, FAL, and CLRA. These California consumer protection statutes "all prohibit unlawful, unfair, or fraudulent business practices." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1144 (N.D. Cal. 2013) (The CLRA, FAL, and UCL … are California consumer protection statutes."). More specifically, the FAL prohibits any "unfair, deceptive, untrue or misleading advertising." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17500). The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The UCL also prohibits unfair competition, which "mean[s] and include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." Cal. Bus. & Prof. Code § 17200. "Generally, a violation of the FAL or the CLRA is also a violation of the fraudulent prong of the UCL." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017).

To state a cognizable claim under these statutes, a plaintiff must allege that a defendant's representations "are likely to deceive a reasonable consumer." *Red v. Kraft Foods, Inc.,* 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012) (citing *Williams*, 552 F.3d at 938); *see also Ebner*, 838 F.3d at 965 ("Plaintiff's claims under the California consumer protection statutes are governed by the 'reasonable consumer' test."). "Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together." *Hadley*, 273 F. Supp. 3d at 1063; *see also*

9

*Ebner*, 838 F.3d at 965-67 (analyzing UCL, FAL, and CLRA together); *Hawkins v. Walmart, Inc.*, --- F.Supp.3d ----, 2025 WL 490063, at \*3 (E.D. Cal. Feb. 13, 2025) (same).

Because whether a practice is deceptive or misleading is generally a question of fact, the "reasonable consumer" test is satisfied at the pleading stage if a plaintiff plausibly alleges "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)); *see also Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 841 (E.D. Cal. 2024) ("Courts rarely grant a motion to dismiss for failure to satisfy this test in the initial pleadings because what a reasonable person would believe is generally a question of fact, and at this stage, the court's focus is on the plausibility of the legal theories.") (internal citations, quotation marks omitted); *Miller v. Yucatan Foods, L.P.*, 2017 WL 11635505, at \*7 (C.D. Cal. Oct. 31, 2017) (same as to motion for judgment on the pleadings). On the other hand, "[d]ismissal is appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams*, 552 F.3d at 939) (alterations in original). "The touchstone under this test is whether the product labeling and ads promoting the product have a meaningful capacity to deceive." *Watson,* 736 F. Supp. 3d at 841 (citing *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023)).

As discussed, Plaintiffs' deceptive labeling claims challenge the front label of Defendant's chocolate truffle packaging, which bears the brand name, "Truffettes de France," or "Truffles from France." (FAC, Doc. 8 ¶ 19.)[5] Defendant does not dispute this translation. (*See* Doc. 9 ¶ 2 ["Defendant agrees that the phrase 'Truffettes de France' literally translates into 'Truffles from France.'"]; Doc. 21 at 17; *see generally* Docs. 16, 22.) Rather, Defendant takes the position that Plaintiffs' CLRA, FAL, and UCL claims fail because no reasonable consumer would be deceived into thinking that the

---

[5] Plaintiffs also allege that the phrase "Depuis 1948," which translates to "Since 1948," reinforces the representation that the truffles were made in France. (Doc. 8 ¶¶ 19-20.) Courts have found similar language insufficient to withstand a pleadings challenge. *See, e.g., Culver v. Unilever United States, Inc.*, 2021 WL 2943937, at \*8 (C.D. Cal. June 14, 2021); *Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826, at \*6 (N.D. Cal. Nov. 8, 2021). However, as explained below, because the Court finds that "Truffettes de France" suffices to state a claim under these statutes, the Court does not consider the "Depuis 1948" phrase for purposes of this discussion.

"protected"[6] brand name "Truffettes de France" means the truffles were manufactured in France, particularly because the back label "explicitly states" that they were made in Canada. (*See* Doc. 16 at 6-8.) It advances several arguments to support its position, none of which the Court finds persuasive.

As an initial matter, Defendant asserts that "[i]n determining whether a consumer would reasonably be deceived by the Products (sic) packaging, this Court must look at the entire packaging." (Doc. 16 at 7.) It also argues that "any reasonable consumer should … be expected to review the packaging to determine the country of origin, if that is something the consumer feels is important." (*Id.* at 8.) However, given Defendant's front-label representations, such an inspection is not required.

The Ninth Circuit has articulated an approach to evaluating packaging for consumer deception claims at the pleadings stage, which begins with consideration of the front label. *See Whiteside*, 108 F.4th at 778-82. If the front label is "plausibly misleading to reasonable consumers, then the court *does not* consider the back label at the pleadings stage." *Id.* at 778 (emphasis added); *see also Williams*, 552 F.3d at 939 (a reasonable consumer is not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); *McGinity*, 69 F.4th at 1098 ("[I]f a defendant … commit[s] an act of deception on the front of a product, then 'the presence of fine print revealing the truth is insufficient to dispel that deception.'") (quoting *Ebner*, 838 F.3d at 966). "However, the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label." *Id.* (citing *Ebner*, 838 F.3d at 966); *see also Watson*, 736 F. Supp. 3d at 843

---

[6] Defendant's repeated reference to its "protected" brand name suggests the argument that a trademark can shield a company from liability for false advertising. (*See* Doc. 16 at 3-4, 6-8.) Although Defendant does not explicitly make this assertion, the Court briefly notes that in *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020), the Ninth Circuit held:

> [B]rand names *by themselves* can be misleading in the context of the product being marketed. Descriptive brand names require of the consumer "little thought," which can make consumers susceptible to purchasing because "*they won't have the time or interest to read about [the product] on [the] website or the back of the box*." *Id.* (quoting the California Attorney General's amicus brief). Thus, a product called "One a Day" gummy vitamins, which required two gummies a day for a full dosage, is explicitly misleading. *Id.* at 696–97. Conversely, if common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage. *Id.* at 690–91.

*Id.* at 1018 (quoting *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (2018)) (emphases in original).

11

1  ("[W]here the front of the product creates more than mere ambiguity, but instead misleads a consumer
2  into thinking one thing that, in fact, is not true, the consumer is not required to dig through other
3  information to dispel that falsity.") (citing *Williams*, 552 F.3d at 939-40). Only when the court
4  determines the front label is ambiguous (i.e. "when reasonable consumers would necessarily require
5  more information before reasonably concluding that the label is making a particular representation"),
6  can the back label be considered at the pleadings stage. *Whiteside*, 108 F.4th at 781.

7       Here, the brand name "Truffettes de France," or "Truffles from France," is not ambiguous; this
8  affirmative representation would plausibly mislead a reasonable consumer to conclude, without more
9  information, that the truffles are, indeed, from France. *Whiteside*, 108 F.4th at 778, 781. Thus,
10 Defendant's back-label claim that the truffles are a "Product of Canada" is "insufficient to dispel that
11 deception," *Ebner*, 838 F.3d at 966, and a reasonable consumer need not look beyond the front label to
12 "discover the truth" as to the truffles' geographic origin, *Williams*, 552 F.3d at 939. This conclusion
13 finds support in numerous cases where the "reasonable consumer" test was applied in a similar
14 context.

15      "In cases addressing … theories that products are misleading as to origin, courts have tended to
16 focus on phrases or images which could be interpreted as affirmative representations that the products
17 are from a particular location." *Tunick v. Takara Sake USA Inc.*, 2023 WL 3958363, at *4 (N.D. Cal.
18 June 12, 2023) (collecting cases). For instance, the plaintiff in *Culver v. Unilever United States, Inc.*,
19 2021 WL 2943937 (C.D. Cal. June 14, 2021), purchased mustard products he believed were made in
20 France based on front labels containing the words "Paris," Depuis 1747," and "Que Maille." *Id.*, at
21 **1, 7. The district court determined that the labeling was not "so misleading" that a reasonable
22 consumer would not be expected to look at the entire packaging to resolve any doubts as to the
23 product's origin, specifically observing that the challenged words did not indicate or even suggest
24 where the mustard was manufactured. *Id.*, at **8-9. *Culver*'s reasoning is especially relevant. It found
25 that:

26            *While the front labels contain two words in the French language – which*
           *are prepositions (i.e. "depuis" and "que") – and two proper nouns (i.e.*
27            *"Paris" and "Maille"), there are no concomitant words or references to a*
           *geographic source or origin. For example, there are no phrases such as*
28            *"from Paris (i.e. "de Paris"), "product of France," or even "imported."*
           … Likewise, the translation of the French words into English does not

suggest the place of manufacture. "Depuis 1747" means "since 1747" and "que Maille" means "that (or than) Maille."

*Id.*, at *8 (emphasis added).

In *Eshelby v. L'Oreal USA, Inc.*, 664 F. Supp. 3d 417 (S.D.N.Y. 2023), the plaintiff claimed she was misled to believe that the defendant's products were made in France based on the word "Paris" appearing on the front label. *Id.* at 423. The court held that "[a]s a matter of law, a mere reference to Paris is insufficient to deceive a reasonable consumer regarding the manufacturing location of a product." *Id.* at 424. It explained that while a reasonable consumer may infer from the brand name "L'Oréal Paris," that the *company* originated in Paris, she would not also conclude that a particular product was manufactured in Paris, or even in France, based on the word "Paris" alone. *Id.* The court rejected plaintiff's argument that "reasonable consumers should not be expected to look for disclaimers correcting misleading representations on the front of the label" because the label "d[id] not make any actual representations about country of manufacture." *Id.* at 424-25.

Similarly, in *La Barbera v. Ole Mexican Foods Inc.*, the court considered defendant's tortilla packaging, which contained front-label claims that allegedly misled plaintiff to believe the tortillas were made in Mexico, including images depicting an altered version of the Mexican flag, a Spanish brand name, and Spanish-language phrases such as "El Sabor de Mexico" (i.e. "The Taste of Mexico") and "Sabrosísimas Tortillas Caseras" (i.e. "Tasty Homemade Tortillas"). *Id.*, 2023 WL 4162348, at *12 (C.D. Cal. May 18, 2023), *appeal dismissed sub nom.*, 2023 WL 11823366 (9th Cir. Sept. 27, 2023). The court noted that the packaging made no references to Mexico "in connection with a place of manufacture" and that the written representations were not "inherently false or misleading." *Id.*, at **14-15. It explained that "[p]hrases like 'The Taste of Mexico!' are at once *true* in every meaningful sense and meaningless; the point is that they are different in kind from stating the Products are *from* Mexico." *Id.*, at *15 (emphases in original).

Here, by contrast, the front label makes more than a "mere reference" to France; it makes an "actual representation[] about [the truffles'] country of manufacture." *Eshelby*, 664 F. Supp. 3d at 424-25. In other words, by representing that the truffles are *from* France, the label refers to France as the geographic origin of the truffles. *See Culver,* 2021 WL 2943937, at *8. This distinction is crucial, as it

13

is precisely the type of misrepresentation that *Culver* and other geographic origin cases have exemplified as "so misleading" that a reasonable consumer need not search elsewhere for the truth. *See Culver*, 2021 WL 2943937, at *9; *Eshelby*, 664 F. Supp. 3d at 425; *see also*, *e.g.*, *Faris v. Petit Pot, Inc.*, 2023 U.S. Dist. LEXIS 172104, at *11 (C.D. Cal. Sep. 26, 2023) (considering back-label claims to resolve ambiguity because although the products "may evoke the spirit of French culture in a vague and non-specific manner through the use of the term 'French Dessert,' an image of a figure wearing a beret, and some French words on the packaging," the packaging made no claim that the desserts were "born in" or "originated in" France); *Steinberg v. Icelandic Provisions, Inc.*, 2022 WL 220641, at *4, *7 n.3 (N.D. Cal. Jan. 25, 2022), *aff'd*, 2023 WL 3918257 (9th Cir. June 9, 2023) (concluding that yogurt's front label containing phrase "Traditional Icelandic Skyr," brand name "Icelandic Provisions," and image of countryside with snow-covered backdrop contained "no explicit statements … about the place of manufacture, and therefore a reasonable consumer can be expected to consult the back label"); *Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 973 (D. Haw. 2019) ("[T]he word 'Hawaiian,' even when accompanied by [imagery associated with Hawai'i], does not represent that the Hawaiian Snacks are *from* Hawai'i …. [I]t more reasonably evokes the spirit of Hawai'i … [b]ut merely referencing or evoking the spirit of Hawai'i is insufficient to confuse a reasonable consumer about the origin of the Hawaiian Snacks.") (emphasis added).

This leads the Court to Defendant's argument that use of its "Truffettes de France" brand name is no different than identifying the *style* or *recipe* of a product by labeling them as French onion soup, French fries, Belgian chocolates, Mexican burritos, or Chinese chicken salad. (Doc. 16 at 7-8; *see also id.* at 9 ["Plaintiffs wanted to purchase French-style truffles, and that is exactly what they purchased and received."].)[7] Indeed, a front label's mere reference to "French truffles" *may* be insufficient to satisfy the reasonable consumer test. *See, e.g., Petit Pot*, 2023 U.S. Dist. LEXIS 172104, at *11 ("French Dessert"); *Steinberg*, 2022 WL 220641, at *4, *7 n.3 ("Icelandic" yogurt); *Maeda*, 407 F.

---

[7] Defendant also submits that no reasonable consumer would believe that a product named "Chinese chicken salad" was manufactured in China "and shipped across the ocean to California." (Doc. 16 at 8.) However, the reasonableness of a consumer's belief that a salad or other perishable item was shipped from another country is incomparable to his relative belief as to a shelf-stable product like chocolate, which was, in fact, shipped from another country—Canada.

14

Supp. 3d at 973 ("Hawaiian Snacks"); *Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826, at *1 (N.D. Cal. Nov. 8, 2021) ("Hawaiian Rolls"); *but see Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 468 (S.D.N.Y. 2020) ("Belgian" chocolate).

Unlike these cases, however, Defendant's front labels state that the truffles are "from France." (*See* Doc. 8 at 5-7; Doc. 9 ¶ 2.) Despite how Defendant chooses to characterize the truffles, the front labels do not contain phrases such as "French-style truffles" or "French truffles." (*See* Doc. 16 at 3, 9.) Nor do they make any representations about the truffles' style or recipe. Some, even most, consumers may consider truffles made from a French recipe to be "French" truffles. That is very different from representing that the truffles are *from* France. In sum, even assuming, *arguendo*, that one or more of these representations could alter the reasonableness of a consumer's belief, Defendant's argument falls flat because the front labels at issue bear none of them.

Finally, Defendant advances the argument—again, without analysis or citation to legal authority—that the country of origin "is a non-issue" because the truffles made by Defendant in Canada are "identical" to those it manufactures in France. (Doc. 16 at 8.) However, as the Court discussed previously, see *supra* Section III.A., Plaintiffs' alleged injury does not involve subjective preferences, nor does it relate to the recipe, ingredients, nutrients, flavor, or quality of the truffles. (*See* Doc. 16 at 5 [arguing that "[t]he only conceivable damages in this case are that Plaintiffs purchased a product they did not enjoy."].) Rather, their alleged injury is economic—Plaintiffs would not have purchased the truffles, or would not have paid a premium for them, had they known the truffles were not made in France. Thus, the country of origin is not only an issue; it is central to Plaintiffs' consumer protection claims.

Guided by case law and common sense, the Court concludes "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by Defendant's front label to believe that its truffles are made in France. *Ebner*, 838 F.3d at 965. Defendant's motion for judgment on the pleadings is **DENIED** as to its "reasonable consumer" challenge to Plaintiffs' CLRA, UCL, and FAL claims.

C. **Breach of Express Warranty Claim**

Defendant argues that Plaintiffs' claim for breach of express warranty fails because the brand

15

name "Truffettes de France" is not an unequivocal promise that the truffles are from France. (Doc. 16 at 9.) Defendant bases its argument largely on the same grounds it challenged Plaintiffs' consumer protection claims.[8]

In California, express warranties are created, as relevant here, by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Cal. Com. Code § 2313(1)(a), (b). Thus, "[t]o state a claim for breach of express warranty under California law, a plaintiff must show that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Franco v. Ford Motor Co.*, 644 F. Supp. 3d 672, 683 (C.D. Cal. 2022) (internal quotation marks omitted).

In *Anderberg v. Hain Celestial Grp., Inc.*, 652 F. Supp. 3d 1232 (S.D. Cal. 2023) the court found the following allegations sufficient to state a claim for breach of warranty under California law:

> (1) Defendant expressly warranted on the packaging of the Products that they are "Reef Friendly," (2) Plaintiff and members of the class reasonably and justifiably relied on the express warranty, (3) Defendant breached the express warranty by selling the Products, which contain ingredients that are not reef friendly, and (4) Plaintiff and members of the class paid a premium price for the Products but did not obtain the full value of the Products as represented." (Doc. 13 at 33.) It is Plaintiff's position that, had she and the class members "known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with the Products." (*Id.*)

---

[8] Defendant asserts that the packaging clearly states the truffles are a product of Canada; that Plaintiffs have not alleged the truffles are inferior in quality to Defendant's truffles made in France (nor could they, because the truffles are identical); and that use of its brand name is no different than "identifying product descriptions" such as French onion soup, French fries, Belgian chocolates, etc. (Doc. 16 at 9.) The Court declines to address these arguments again. Relatedly, Defendant asserts there is no breach of warranty "as a matter of law" because "Plaintiffs wanted to purchase French-style truffles, and that is exactly what they purchased and received." (*Id.*) The argument is completely unsupported by the pleadings. Nowhere in the FAC do Plaintiffs claim they wanted to purchase French-style truffles or even that Defendant's truffles were not "French-style." (*See generally* Doc. 8.) Rather, Plaintiffs allege the truffles were advertised as "French-made" and they purchased them in reliance on this representation. (*See id.* ¶ 24.)

16

*Id.* at 1243.

Plaintiffs' allegations are nearly identical here. They allege (1) Defendant "expressly warranted on the Products' front labeling that the Products are made in France," (2) Plaintiffs "reasonably and justifiably relied on the foregoing express warranties," (3) Defendant "breached the express warranties made to Plaintiffs … because the Products are not made in France, as promised," and (4) Plaintiffs "paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiffs and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with it." (Doc. 8 ¶¶ 64, 66, 67-68.) At this stage, the Court agrees with the court in *Anderberg* that this is sufficient to state a claim.

Moreover, district courts within the Ninth Circuit have held that "stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty." *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 896-97 (N.D. Cal. 2023) (quoting *Hadley*, 273 F. Supp. 3d at 1095); *Goodwin v. Walgreens, Co.*, 2023 WL 4037175, at *4 (C.D. Cal. June 14, 2023) (concluding because plaintiff stated claims under UCL, CLRA, and FAL, she had also stated claim for breach of express warranty under section 2313) (citing *Hadley*, 273 F. Supp. 3d at 1095); *Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 2576770, at *4 (S.D. Cal. Mar. 20, 2023) (same); *cf. Weiss v. Trader Joe's Co.*, 2018 WL 6340758, at **7-8 (C.D. Cal. Nov. 20, 2018), *aff'd sub nom. Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021) (finding that where plaintiff's consumer protections claims failed because nothing in defendant's labeling or advertising made the promises plaintiff alleged they did, her express warranty claim premised on same alleged misrepresentations also failed). Therefore, Defendant's motion is **DENIED** as it pertains to Plaintiffs' express warranty claim.

### D.    Breach of Implied Warranty Claim

Defendant argues Plaintiffs' claim for breach of implied warranty of merchantability claim also fails because the California Commercial Code requires a product to be "reasonably fit for the ordinary purposes for which the product is manufactured and sold - not to the country where it was manufactured." (Doc. 16 at 10, citing Cal. Comm. Code § 2314(2).) Therefore, Defendant asserts the truffles "are fit for the purpose of consuming them, whether they are made in Canada or France." (*Id.*)

Indeed, a contract for the sale of goods "implies a warranty of merchantability that goods are

17

fit for ordinary purposes for which such goods are used." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c)). However, the California Commercial Code also requires merchantable goods to meet five other criteria, one of which is to "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f); *Hawkins*, 2025 WL 490063, at \*5; *see also Butts v. Cibo Vita, Inc.*, 2023 WL 2588012, at \*7 (E.D. Cal. Mar. 20, 2023), *appeal dismissed*, 2023 WL 7179924 (9th Cir. June 30, 2023) ("The implied warranty of merchantability can be violated on a number of bases, such as that the product is not fit for the ordinary purposes for which such good is used, or that it does not conform to the promises or affirmations of fact made on the container or label if any.") (internal quotation marks, alterations omitted).

Rather than alleging the truffles were unfit for ordinary purposes, Plaintiffs assert that by representing that the truffles were "Truffettes de France" on its front labels, Defendant made an implied promise that the truffles were made in France, and because they were not, the truffles failed to conform to that promise. (Doc. 8 ¶¶ 73, 75.) This is sufficient to state a claim for breach of implied warranty under California law. *See Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 650 (C.D. Cal. 2021) (finding allegations that defendant made an implied promise products were made in the United States and because they were not, the products did not conform to the promises made on the container or label under section 2314(2)(f), sufficient to state a claim). Thus, Defendant's motion is **DENIED** as to Plaintiffs' implied warranty claim.

### E. Quasi-Contract/Unjust Enrichment Claim

Lastly, Defendant argues Plaintiffs' claim for quasi-contract/unjust enrichment fails as a matter of law because unjust enrichment is not a stand-alone cause of action. (Doc. 16 at 10.)[9] Although in

---

[9] Defendant raises other arguments, but their relevance to this claim is unclear. Defendant provides no citation to legal authority or meaningful analysis to connect its assertions to the Court's analysis of an unjust enrichment claim or otherwise explain how they may factor into the discussion. For example, Defendant argues in its reply brief: "as stated in the Motion, this Court should use its discretion not to construe the unjust enrichment cause of action as a quasi-contract because the pleadings establish [Defendant] does not sell the truffles at a higher price if they are manufactured at its Canadian facility as opposed to its French facility, and the truffles are identical no matter where they are manufactured." (Doc. 22 at 13.) They note that Plaintiffs have not alleged the price they paid or would have paid, or that the Canadian truffles were "inferior in quality or otherwise" because they were not manufactured in France. (Doc. 16 at 11.) They also reassert that because the back label of the

California "unjust enrichment itself is not a cause of action, … the Ninth Circuit has recognized that when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1087 (N.D. Cal. 2022) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)) (cleaned up). "The doctrine applies where plaintiffs, having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017). "Quasi-contract claims require the plaintiff to show '(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense.'" *Mendoza v. Procter & Gamble Co.*, 707 F. Supp. 3d 932, 945 (C.D. Cal. 2023) (quoting *MH Pillars*, 277 F. Supp. 3d at 1094).

Plaintiffs allege they are entitled to relief on this claim because Defendant "induce[d]" them to purchase the truffles by "intentionally and recklessly" making "misleading and deceptive representations;" Plaintiffs conferred a benefit upon Defendant in the form of payment for its products; Defendant received and retained the benefit at Plaintiffs' expense (i.e. Plaintiffs "did not receive the full value of the benefit conferred"); and it would be "inequitable and unjust" to permit Defendant to retain that benefit. (*See* Doc. 8 ¶¶ 80-83.) This is sufficient to state a quasi-contract cause of action. *See Astiana*, 783 F.3d at 762 (finding plaintiffs stated a quasi-contract cause of action by alleging defendant had "'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result"); *see also Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1213 (S.D. Cal. 2023) ("Plaintiffs have sufficiently stated a quasi-contract cause of action: Defendant enticed Plaintiffs and class members to purchase their products through fraudulent misrepresentations and that Defendant was unjustly enriched as a result."); *DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 968 (N.D. Cal. 2023) (plaintiff stated quasi-

---

truffles indicated they were made in Canada, "there was simply no misleading advertising or misrepresentations." (*Id.* at 10.) In addition to the majority of these arguments being previously rejected, see *supra* Section III.A, it is lost on the Court how these points are relevant here. Without clear, legally supported, and meaningfully developed arguments responsive to Plaintiffs' claim for unjust enrichment, the Court declines "to sort through the noodles." *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

contract claim based on allegations that defendant's "false and misleading labelling" caused plaintiffs to purchase product "at a premium" and defendant and defendant "received a direct and unjust benefit" at plaintiffs' expense). Accordingly, Defendant's motion is **DENIED** as to Plaintiffs' quasi-contract/unjust enrichment claim. In sum, Plaintiffs have adequately pled Article III and statutory standing, and Defendant has not demonstrated its entitlement to judgment as a matter of law on any of Plaintiffs' claims.

**IV.    Conclusion and Order**

For the reasons set forth above, the Court **ORDERS**:

1. Defendant's motion for judgment on the pleadings (Doc. 16) is **DENIED**.

IT IS SO ORDERED.

Dated:    **March 28, 2025**

UNITED STATES DISTRICT JUDGE